IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RACHEL ZUCKERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 09-CV-4819 |
| | ) | |
| UNITED OF OMAHA LIFE INSURANCE | ) | Judge Robert M. Dow, Jr. |
| COMPANY, AMERICAN | ) | |
| PHARMACEUTICALS PARTNERS, INC., | ) | |
| and AMERICAN PHARMACEUTICALS | ) | |
| PARTNERS, INC. EMPLOYEE BENEFIT | ) | |
| PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is a motion to dismiss [48] Plaintiff Rachel Zuckerman's first amended complaint filed by Defendant American Pharmaceuticals Partners, Inc. ("APP" or "the Plan"). Also pending is Defendant APP's motion to strike jury demand [50]. For the reasons stated below, the Court denies Defendant's motion to dismiss [48] and grants Defendant's motion to strike jury demand [50].

## I. Background[1]

Plaintiff Rachel Zuckerman worked for Defendant APP as a Senior Scientist-project. Defendant AAP sponsored the American Pharmaceuticals Partners, Inc. Employee Benefit Plan ("Plan"). APP purchased Group Policy No. GUD-252C from Defendant United of Omaha to fund the long-term disability ("LTD") benefits offered under the Plan. As the insurer, United of

---

[1] For purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the first amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Omaha agreed to pay certain benefits to eligible Plan participants "subject to the terms, conditions, and limitations of [the] Policy."

On April 4, 2006, Plaintiff stopped working for APP due to the combined effects of headaches, fibromyalgia, difficulty sleeping, and cognitive impairments, which Plaintiff believes were the result of chemical exposure in the workplace. After leaving her employment, Plaintiff filed a claim for worker's compensation benefits. She also applied for Social Security disability benefits, which she was awarded. APP advised Plaintiff that she was not eligible to apply for LTD benefits while also seeking worker's compensation benefits. APP later confirmed that position in a letter sent by APP to United of Omaha on August 12, 2008. The letter states that APP "instructed" Plaintiff not to file her disability claim until after her Worker's Compensation claim was resolved. Contrary to APP's advice, Plaintiff was eligible for LTD benefits regardless of causation because the LTD policy treats workers' compensation benefits as an offset against LTD benefits, but does not exclude benefit eligibility in the event of work-related injuries or illnesses.

In reliance on APP's representations, Plaintiff did not submit her claim form until July 29, 2008. At the time that she applied, Plaintiff was approved to receive short-term disability benefits by Disability Management Services ("DMA"), which acted on behalf of the Plan with respect to short-term benefits. Then, on November 24, 2008, Defendant United of Omaha issued a determination that Plaintiff was not disabled. Plaintiff appealed this determination, but on May 11, 2009, United of Omaha upheld its decision and refused to pay benefits. In addition to affirming its decision that Plaintiff was not disabled, United of Omaha raised an additional reason for the denial, which previously had not been communicated to Plaintiff – namely, that the claim was denied due to late notice of the claim and the failure to timely submit proof of loss.

Count I of Plaintiff's First Amended Complaint ("FAC") seeks disability benefits from United of Omaha Life Insurance Company ("United of Omaha") and the Plan under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). On July 21, 2010, the Court granted United of Omaha's motion to dismiss Count I against it because the Plan, not United of Omaha, was the proper defendant. Accordingly, Count I remains only against the Plan. Defendant APP contends that the pleadings make clear that the Plan properly denied Plaintiff's claim for benefits as untimely and therefore the Plan is not liable to Plaintiff under Count I.

## II. APP's Motion to Dismiss

### A. Legal Standard On Motion To Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

On a Rule 12(b)(6) motion to dismiss, the Court generally must confine its inquiry to the factual allegations set forth within the four corners of the operative complaint. See *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). In the usual case, therefore, if a party moving for a 12(b)(6) dismissal submits documents with its motion to dismiss, the Court either must ignore the documents or convert the motion to one for summary judgment. See Fed. R. Civ. Pro. 12(b); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture*, 987 F.2d at 431. Documents that fall within this "narrow" exception must be "concededly authentic." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Applying that standard, the Court will consider the following documents that are referred to in Plaintiff's complaint and central to her claims: (1) APP's Group Policy No. GUD-252C, which APP purchased from United of Omaha to fund long-term disability benefits offered under the APP Employee Benefit Plan ("Plan"); and (2) a letter dated August 12, 2008, from APP to United of Omaha, advising United of Omaha that APP advised Plaintiff not to file her disability claim until after her Worker's Compensation claim was resolved.

**B.     Analysis**

APP seeks to dismiss Count I of Plaintiff's complaint because she failed to file a timely claim for LTD benefits. Plaintiff does not dispute that the claim she submitted to the Plan was untimely. However, she maintains that because the Plan admittedly misled her into deferring the

submission of her claim, the Plan waived its right to rely on the limitation period. In addition, Plaintiff contends that the Plan has not made a showing of prejudice resulting from the untimely claim.

ERISA sets certain minimum requirements for procedures and notification when a plan administrator denies a claim for benefits. In a nutshell, ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for "full and fair review" by the administrator. See *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992). Section 1133 of ERISA reads as follows:

> In accordance with regulations of the Secretary, every employee benefit plan shall-
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The regulations promulgated by the Secretary require that the initial notice of a claim denial contain the following:

> (1) The specific reason or reasons for the denial;
>
> (2) Specific reference to pertinent plan provisions on which the denial is based;
>
> (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f).  These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case.  See *Halpin*, 962 F.2d at 689.  As the Seventh Circuit noted in *Wolfe v. J.C. Penney Co.,* "[d]escribing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R. § 2560.503-1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record."  710 F.2d 388, 392 (7th Cir. 1983); see also *Halpin*, 962 F.2d at 690 ("Our case law, which is in accord with that of the other circuits, makes clear that these regulations are designed to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial."); *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521 (7th Cir. 1986) ("[T]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.").  In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient.  See *Halpin*, 962 F.2d at 690.

Defendant takes the position that the Plan's citation to the untimeliness of Plaintiff's appeal "in its letter denying Plaintiff's benefits appeal" was acceptable because while ERISA prohibits "an attempt by a plan to supply a new rationale for denying benefits *after* the claim is in litigation," it does not prohibit a plan "from denying a claim based on defenses not considered during the plan's initial claims review.  Def. Br. [53] at 2 (emphasis in original).  Unfortunately for Defendant, *Halpin* holds otherwise.  In that case, the Seventh Circuit explained that, "[i]n a nutshell, ERISA requires that specific reasons for denial be communicated to the claimant and

6

that the claimant be afforded an opportunity for 'full and fair review' *by the administrator*." *Halpin*, 962 F.2d at 688 (emphasis added); see also *Reich v. Ladish Co.*, 306 F.3d 519, 524 n.1 (7th Cir. 2002) ("Ladish was required to give Reich every reason for its denial of benefits *at the time of the denial*.") (emphasis added). Only by providing every reason for the denial can the participant "appreciate the fatal inadequacy of his claim as it stands" and "gain a meaningful review by knowing with what to supplement the record" between the initial notice of a claim denial and the determination under the internal appeals process. *Halpin*, 962 F.2d at 689; see also *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 392 (7th Cir. 1983). In short, as the Seventh Circuit has stressed, the requirements for claim denials under ERISA and its implementing regulations "enable the claimant to prepare adequately 'for any *further administrative review, as well as appeal to the federal courts*.'" *Halpin*, 962 F.2d at 689 (emphasis added) (quoting *Matuszak v. Torrington Co.*, 927 F.2d 320, 323 (7th Cir. 1991)).

Construing the facts in the light most favorable to Plaintiff, APP admittedly misled Plaintiff into deferring the submission of her claim. APP advised Plaintiff that she was not eligible to apply for LTD benefits while also seeking worker's compensation benefits. APP later confirmed that position in an August 2008 letter sent by APP to United of Omaha, stating that APP "instructed" Plaintiff not to file her disability claim until after her Worker's Compensation claim was resolved. Relying on APP's representations, Plaintiff did not submit her claim form until July 29, 2008. It turns out that APP was wrong, and that Plaintiff was eligible for LTD benefits regardless of causation because the LTD policy treats workers' compensation benefits as an offset against LTD benefits, but does not exclude benefit eligibility in the event of work-related injuries or illnesses.

APP now asks the Court to dismiss Count I because Plaintiff, relying on APP's advice, failed to file a timely claim for LTD benefits. Yet the timeliness of Plaintiff's claim was not raised until after United of Omaha denied the long-term disability claim on the merits and Plaintiff had exhausted her appeal rights pursuant to 29 U.S.C. § 1133. In fact, United of Omaha's initial letter denying benefits made no reference to the timeliness of Plaintiff's claim. As set forth above, the ERISA statute and regulations require plans to set forth reasons when a claim is initially denied, in order to permit the claimant to "full and fair" review by the administrator of any issues raised by the claimant on appeal. Raising a new issue—timeliness—at the time that the final claim determination was issued and appeals were exhausted left Plaintiff without the opportunity to respond, as both the ERISA statute and its accompanying regulations require. See 29 U.S.C. § 1133(1) (requiring that every benefit plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, *setting forth the specific reasons for such denial*, written in a manner calculated to be understood by the participant.") (emphasis added); 29 C.F.R. § 2560.503-1(g)(i) (mandating that the benefit determination set forth "[t]he specific reason or reasons for the adverse determination"). As clearly stated by the Seventh Circuit in *Halpin*, a "*post hoc* attempt to furnish a rationale for a denial of * * * benefits in order to avoid reversal on appeal, and thus meaningful review' is not acceptable." 962 F.2d at 696 (internal quotations omitted).

In light of the foregoing discussion, the Court determines that APP's *post hoc* rationale for denying benefits based upon the previously unasserted timeliness requirement is prohibited by ERISA. The Court finds that APP's letter of November 24, 2008, which made no reference to the timeliness of Plaintiff's claim, did not "substantially comply" with the ERISA statute and regulations because it did not set forth untimeliness as a specific reason for the denial of

8

Plaintiff's benefits. See *Reich v. Ladish Co. Inc.*, 306 F.3d 519, 524 n.1 (7th Cir. 2002) ("Ladish was required to give Reich *every reason* for its denial of benefits at the time of the denial.") (emphasis added). Springing a new "defense" to a claim at the conclusion of the administrative appeal process defeats both prongs of the "'full and fair' review by the administrator" mandated under ERISA. *Halpin*, 962 F.2d at 688; see also 29 U.S.C. § 1133. "ERISA and its accompanying regulations 'were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by the Fund as a smoke screen to shield itself from legitimate claims'" (*Short v. Central States, S.E. & S.W. Areas Pension Fund,* 729 F.2d 567, 575 (8th Cir. 1984) (quoting *Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir. 1981)); *Halpin*, 962 F.2d at 696), which is exactly what APP attempts to do through its motion. APP's motion to dismiss [48] is denied.

### III. APP's Motion to Strike Jury Demand

Plaintiff alleges that she is entitled to disability benefits under the Plan and, pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), seeks: (1) judgment in her favor; (2) an order directing Defendants to pay disability income benefits in the amount required by the Plan; and (3) a "determin[ation] and then declar[ation] that Defendant Mutual of Omaha and/or the Plan is required to continue paying Plaintiff benefits so long as she meets the policy terms and conditions for receipt of benefits." Citing the Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), Plaintiff characterizes her ERISA claim as an action that is "legal in nature" and maintains that she is entitled to a jury trial on her ERISA claim.

In *Knudson*, an employee benefit plan sued under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), to recover certain benefit overpayments from plan beneficiaries. 534 U.S. at 208.

The beneficiaries were injured in an automobile accident and the plan paid for the medical care they received. *Id.* at 207. When the beneficiaries settled claims with the third parties responsible for their injuries, the plan sought to enforce the plan provision requiring the beneficiaries to repay the plan for the benefits it paid. *Id.* at 208. The Court held the plan was not entitled to relief under § 502(a)(3) because that section only authorized equitable relief and the plan's action to impose personal liability on the participants based on a contractual obligation to pay money was an action at law, not equity. As a result, the money damages the plan sought were legal, not equitable remedies. *Id.* at 210-214.

In Plaintiff's view, because she, like the plaintiff in *Knudson*, seeks money damages, her claim is one for legal relief and she is entitled to a jury trial. But *Knudson* did not hold that a claim to recover plan benefits under § 502(a)(1)(B) of ERISA was an action for legal remedies. Nor did *Knudson* hold that there was a right to a jury trial for claims brought under ERISA. Indeed, as Plaintiff acknowledges, the Court in *Knudson* did not address the issue of jury trials at all. Additionally, all eleven Circuit Courts that have reviewed the issue of whether there is a right to a jury trial under § 502(a) of ERISA have concluded that there is no such right. See *Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 54 (1st Cir. 2000); *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258 (2nd Cir. 1996); *Pane v. RCA Corp.*, 868 F.2d 631, 636 (3rd Cir. 1989); *Berry v. CIBA-GEIGY Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985); *Borst v. Chevron Corp.*, 36 F.3d 1308, 1323-24 (5th Cir. 1994); *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 883 (6th Cir. 1997); *Wardle v. Central States, S.E. and S.W. Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir. 1980); *In re Vorpahl*, 695 F2d. 318, 322 (8th Cir. 1982); *Thomas v. Oregon Fruit Prod. Co.*, 228 F.3d 991, 996 (9th Cir. 2000); *Adams v. Cyprus AMAX Minerals Co.*, 149 F.3d 1156, 1161-62 (10th Cir. 1998); *Blake v. UnionMutual Stock Life Ins. Co. of Am.*,

906 F.2d 1525, 1526 (11th Cir. 1990).[2] Moreover, the Seventh Circuit has continued to hold that jury trials are unavailable for ERISA plaintiffs after *Great-West*.[3] See *Patton v. MFS/Sun Life Fin. Distribs.,* 480 F.3d 478, 484 (7th Cir. 2007) ("the plaintiff has no right to a jury trial" in ERISA case); *McDougall v. Pioneer Ranch Ltd. P'ship,* 494 F.3d 571, 575-76 (7th Cir. 2007) ("[T]here is no right to a jury trial because ERISA's antecedents are equitable, not legal."); see also *George v. Kraft Foods Global, Inc.*, 2008 WL 780629, at *5 (N.D. Ill. Mar. 20, 2008) (rejecting an argument identical to Plaintiff's "in light of the fact that since *Great-West,* the Seventh Circuit has twice stated * * * that there is no jury trial right for ERISA claims.").

Accepting Plaintiff's argument that *Knudson* cleared the way for jury trials in ERISA cases requires the court "to presume the Supreme Court * * * intended, *sub silentio*, to overturn" that widely-accepted and long-established rule. *Richardson v. Astellas U.S. LLC Employee Benefit Plan and Life Ins. Co. of North America*, 610 F. Supp. 2d 947, 952 (N.D. Ill. 2009)

---

[2] Numerous courts in this District likewise have rejected Plaintff's expansive reading of *Great-West.* See, *e.g., Richardson v. Astellas U.S. LLC Employee Benefit Plan and Life Ins. Co. of North America*, 610 F.Supp.2d 947, 952 (N.D. Ill. 2009)*; Walker v. Life Ins. Co. of N. Am.,* 2009 WL 561834 (N.D. Ill. Mar. 2, 2009); *George v. Kraft Foods Global, Inc.,* 2008 WL 780629 (N.D. Ill. Mar. 20, 2008); *Jetseck v. Prudential Ins. Co. of Am.,* 2007 WL 3449031 (N.D. Ill. Nov. 15, 2007). As these courts noted, nowhere in the *Great-West* opinion did the Supreme Court address the right to a jury trial under ERISA. Furthermore, the plaintiff in *Great-West* was a plan fiduciary suing for what was in essence a breach of contract by the beneficiary, which is distinct from a claim brought by a plan beneficiary against the fiduciary challenging a benefits determination. See *Aetna Health Inc. v. Davila,* 542 U.S. 200, 218 (2004) ("[A] benefit determination under ERISA * * * is generally a fiduciary act."). This is particularly true where, as here, the plaintiff is seeking declaratory and injunctive relief in the form of an order requiring the defendant "to continue paying Plaintiff benefits so long as she meets the policy terms and conditions for receipt of benefits." This type of relief is equitable in nature. See, *e.g.*, *America's MoneyLine, Inc. v. Coleman,* 360 F.3d 782, 786 (7th Cir. 2004) (declaratory judgment and injunctive relief are equitable remedies).

[3] Plaintiff's reliance on the Seventh Circuit's recent opinion in *Mondry v. Am. Family Mutual Ins. Co.,* 557 F.3d 781 (7th Cir. 2009), is unavailing. In that case, the Seventh Circuit held that a plaintiff cannot recover monetary relief under ERISA's equitable relief provision, Section 1132(a)(3), when he is able to recover benefits under Section 1132(a)(1)(B). *Id.* at 804-05. The Court did not decide whether a claim for benefits under Section 1132(a)(1)(B) is a legal claim for purposes of the Seventh Amendment, or whether there is a right to a jury trial on such a claim. See *id.*

(quoting *George*, 2008 WL 780629, at *5). In the face of overwhelming precedent that there simply is no right in this context, the Court cannot conclude that such a right exists. To the extent that Plaintiff believes the Seventh Circuit should re-examine its holdings in these cases and give *Great-West* a more expansive reading, Plaintiff's argument must be addressed to the Seventh Circuit. This Court has no authority to disregard the settled law of this Circuit. Accordingly, the Court grants APP's motion to strike [50], and Plaintiff's jury demand is stricken.

## IV. Conclusion

For the foregoing reasons, the Court denies Defendant's motion to dismiss [48] and grants Defendant's motion to strike jury demand [50]. Plaintiff's jury demand is stricken.

Dated: May 31, 2011

Robert M. Dow, Jr.
United States District Judge