IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RACHEL ZUCKERMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 09 C 04819 |
| UNITED OF OMAHA LIFE INSURANCE COMPANY, AMERICAN PHARMACEUTICALS, INC., and AMERICAN PHARMACEUTICALS PARTNERS, INC. EMPLOYEE BENEFIT PLAN, | ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rachel Zuckerman seeks to recover long-term disability benefits under the American Pharmaceuticals Partners, Inc. Employee Benefit Plan ("Plan"), sponsored by Defendant American Pharmaceuticals Partners Co. ("APP") and underwritten by Defendant United of Omaha Life Insurance Company ("United"), pursuant to § 502(a)(1)(B) of the Employment Retirement Income Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The matter now before the Court is the determination of the appropriate standard of review applicable to United's denial of Zuckerman's claim for long-term disability ("LTD"). Zuckerman argues that, pursuant to federal and Illinois law, the standard of review should be *de novo*. Defendants argue that the Court must review the denial of benefits under an arbitrary-and-capricious standard, pursuant to a discretionary clause in the Plan's policy. For the reasons set forth below, the Court finds that the applicable standard of review is *de novo*.

## I. Background

Zuckerman was employed by APP as a Senior Scientist-project leader in Melrose Park, Illinois. She stopped working at APP on April 4, 2006 due to the combined effects of headaches, fibromyalgia, sleep difficulty and cognitive impairments, which she believes was caused by chemical exposure in the workplace.

To fund its long-term disability benefits offered under the Plan, APP purchased Group Policy No. GUD-252C ("Policy") from United. Def. Mot. to Dismiss, Dkt. 18, Ex. 1 at 2. The Policy states an effective date of July 1, 2005, and contains a clause reserving to United the discretion and final authority to construe and interpret the Policy. *Id.* at 8. Specifically, the clause states that:

> By purchasing the policy, the Policyholder grants United of Omaha Life Insurance Company the discretion and the final authority to construe and interpret the policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United. In making any decision, United may rely on the accuracy and completeness of any information furnished by the Policyholder or an insured person. United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

*Id.*

Plaintiff applied for benefits and was approved for short-term disability. However, on November 24, 2008, United issued a determination that Zuckerman was not disabled. Zuckerman appealed the determination, but on May 11, 2009, United affirmed its decision and refused to pay LTD benefits. On August 6, 2009, Zuckerman filed a complaint with this Court averring that she is entitled to all LTD benefits under the Plan due since September 19, 2006. The parties submitted position papers on the issue of the standard of review of the LTD determination on July 11, 2011 and supplemental position papers on March 15, 2012. The Court

must now decide the appropriate standard of review applicable to United's denial of Zuckerman's claim for LTD benefits.

## II. Analysis

Zuckerman argues that the appropriate standard of review is *de novo*. "The standard of judicial review in civil actions under 29 U.S.C. § 1132(a)(1)(B) depends upon the discretion granted to the plan administrator in the plan documents." *Semien v. Life Ins. Co. of North America,* 436 F.3d 805, 810 (7th Cir. 2006). "Generally, the denial of benefits under an ERISA employee benefits plan is reviewed 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Ball v. Std. Ins. Co.,* No. 09 C 3668, 2011 WL 759952, at *2 (N.D. Ill. Feb. 23, 2011) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). When the plan contains a discretionary clause, however, the standard of review is "the more deferential [arbitrary-and-capricious] standard." *Id.* (citing *Semien,* 436 F.3d at 810). United's Policy contains a discretionary clause, and the Defendants argue that the Court must therefore review United's determination under the more deferential arbitrary-and-capricious standard.

Zuckerman contends that the discretionary clause in United's policy is unenforceable under § 2001.3 of Title 50 of the Illinois Administrative Code,[1] a regulation promulgated by the Illinois Director of Insurance ("Director") that prohibits discretionary clauses, like the one in United's policy, in any health or disability insurance policy issued in Illinois. Defendants contend that § 2001.3 is invalid and unenforceable because the Director exceeded his statutory grant of authority under the Illinois Insurance Code by promulgating a rule that prohibits all

---

[1] Effective July 1, 2005. 29 Ill. Reg. 10172 (July 15, 2005); Ill. Admin. Code tit. 50, § 2001.3 (2005).

discretionary clauses. *See* 215 ILCS 5/143(1) & 401. Defendants also argue that, even if a valid exercise of the Director's authority under Illinois law, § 2001.3 is preempted by ERISA, and therefore, the Policy's discretionary clause is effective under *Firestone Tire,* and an arbitrary-and-capricious standard of review applies to Zuckerman's claim.

### A. Validity and Enforceability of Section 2001.3 of Title 50 of the Illinois Administrative Code

Defendants acknowledge that, if § 2001.3 is valid (and not preempted by ERISA, an argument addressed below), review of United's LTD determination is *de novo*. They contend that § 2001.3 is invalid and unenforceable because the Director did not have authority under the Illinois Insurance Code to issue regulations categorically banning certain insurance practices and because the discretionary clause in United's Policy does not give rise to any of the harms that the Legislature authorized the Director to address.[2]

Section 2001.3 prohibits discretionary clauses in health and disability insurance policies, providing that:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

---

[2] Neither party argues that the question of whether the promulgation of § 2001.3 exceeded the Director's authority under the Illinois Insurance Code should be certified to the Illinois Supreme court for determination, and this Court agrees. The Seventh Circuit has explained that certification is "appropriate when the case concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative…and where the state supreme court has yet to have an opportunity to illuminate a clear path on the issue." *Liberty Mutual Fire Ins. Co. v. Statewide Ins. Co.,* 352 F.3d 1098, 1100 (7th Cir. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 672 (7th Cir. 2001)). In this case, however, the Illinois Supreme Court and state appellate courts have clearly spoken on the issue of an agency director's discretion and authority to promulgate regulations pursuant to an enabling statute, as well as the legislative intent and public policy goals of the Illinois Insurance Code, sufficient for this Court to make a determination.

4

Ill. Admin. Code tit. 50, § 2001.3. The purpose of the rule is to:

> prohibit all such policies from containing language reserving sole discretion to interpret policy provisions with the insurer. The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard.

29 Ill. Reg. 10172.

Section 401 of the Illinois Insurance Code grants the Director the authority "to make reasonable rules and regulations as may be necessary for making effective such laws." 215 ILCS 5/401(a). The Director is authorized to promulgate regulations under § 401(a), and derives the statutory authority for § 2001.3 from § 143(1) of the Insurance Code, which provides that:[3]

> It shall be the duty of the Director to withhold approval of any such policy, certificate, endorsement, rider, bylaw or other matter incorporated by reference or application blank filed with him if it contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, ambiguous, misleading, inconsistent, deceptive, contrary to law or to the public policy of this State, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy.

215 ILCS 5/143(1).

Plaintiff fails to address Defendants' argument concerning the validity of § 2001.3 in their Position Statement, Dkt. 67, or their Supplement Position Statement, Dkt. 89. "The party challenging the validity of a regulation," however, "bears the burden of proving its invalidity." *Bd. of Trs. of the Univ. of Illinois v. Illinois Educ. Labor Relations Bd.,* 653 N.E.2d 882, 884 (Ill.

---

[3] The Court notes that statutory authority for § 2001.3 also derives from §§ 355, 356a and Articles IX and XX. *See* 29 Ill. Reg. 10172. Section 355 addresses accident and health policies, requiring insurers to submit all rate premiums and risk classifications to the Director for approval. If disapproved, the Director must issue a written decision, and thereafter it is unlawful for any company to issue a policy in the form disapproved. Section 356a sets certain requirements for accident and health policy forms. Articles IX and XX deal with provisions related to all companies and to accident and health insurance, respectively. Defendants do not rely on these sections and provisions in their argument, however.

5

App. Ct. 1995) (citing *Begg v. Bd. of Fire & Police Comm'rs*, 459 N.E.2d 925, 928 (Ill. 1984)); *see also Julie Q. v. Dep't. of Children and Family Servs.,* 963 N.E.2d 401, 411 (Ill. App. Ct. 2011) (citing *People v. Molnar,* 857 N.E.2d 209 (Ill. 2006)). Under Illinois law, this is a heavy burden that Defendants fail to carry.

"Administrative regulations are valid 'only to the extent that they follow the statute.'" *People v. Henry,* 924 N.E.2d 1126, 1130 (Ill. App. Ct. 2010) (citing *People v. Bair,* 884 N.E.2d 184, 192 (Ill. App. Ct. 2008)). "If a regulation does not follow the statute that authorized its creation, it is invalid." *Id.* "To determine whether a regulation follows the statute, a court must ascertain and give effect to the legislature's intent." *Id.*

That said, "[a]n administrative regulation carries the same presumption of validity as a statute, and so long as the regulation furthers the purposes of the statute and is not arbitrary, unreasonable or capricious, it will be sustained." *Bd. of Trs. of the Univ. of Illinois,* 653 N.E.2d at 884. "An agency has the inherent authority and is given wide latitude and discretion to adopt regulations that are reasonably necessary to perform its statutory duties." *Julie Q.*, 963 N.E.2d at 411. Moreover, "[a]gency authority extends to that conferred by 'fair implication and intendment…for the purpose of carrying out and accomplishing the objective for which agencies were created." *Id.* (citing *Briggs v. State,* 752 N.E.2d 1206 (Ill. 2001)). "If it can be reasonably done, a court has a duty to affirm the validity of administrative regulations." *Id.* (citing *Minifee v. Doherty,* 777 N.E.2d 510 (Ill. App. Ct. 2002)).

Defendants argue that the Director does not have the statutory authority to promulgate a rule which declares "categories of provisions *per se* illegal," but must approve or disapprove of insurance policies on an *individual* basis. Position Statements, Dkt. 67, at 6. Defendants rely on *Allied American Insurance Company v. Washburn,* 513 N.E.2d 50 (Ill. App. Ct. 1987) in support

of their argument. However, Defendants' reliance in *Allied American* is misplaced. Finding that the Director exceeded his statutory authority by promulgating a regulation that prohibited the issuance of stated value insurance policies with a predetermined depreciation schedule, the *Allied American* court explained that "[t]he Director's rule making authority is limited to regulating the *terms and provisions* of insurance policies. He is not empowered to outlaw a particular *kind* of insurance coverage." *Id.* at 52 (emphasis added). Moreover, in that situation, the Director did not "explain why an insurance coverage based on an agreed depreciation schedule is *per se* unconscionable or inherently misleading" pursuant to § 143(2), the section under which the regulation was implemented.[4] *Id.* at 53. The appellate court found that stated value insurance based on a depreciation schedule "is a reasonable and efficient method of determining the insured's coverage and the insurer's liability for the loss of the automobile[, and a] depreciation schedule is an easily understood predetermined method for measuring the value of the automobile at the time of loss." *Id.* In so explaining, the appellate court noted that such "[a]n insurance policy… does not favor [either] the insurer or the insured." *Id.* at 54.

Nowhere does the *Allied American* court require the Director to examine "policies on a case-by-case basis," as the Defendants argue. Position Statements, Dkt. 67, at 9. To the contrary, while the appellate court held that "the Director lacked authority to totally bar the issuance of stated value insurance *policies*," it also confirmed that "the Director unquestionably

---

[4] Section 143(2) of the Illinois Insurance Code provides that:

> If the Director shall find from an examination of any such policy form, rider, endorsement, certificate, application blank, or other matter incorporated by reference in any such policy so filed that it (i) violates any provision of this Code, (ii) contains inconsistent, ambiguous, or misleading clauses, or (iii) contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy, he shall order the company or companies issuing these forms to discontinue their use.

215 ILCS 5/143(2).

has the authority to regulate the manner in which stated value insurance is sold and to prohibit deception in such insurance policies as well as unfair and unreasonable depreciation rates." *Id.* at 55 (emphasis added). Here, the Director is not prohibiting a *type* of insurance policy, but regulating a particular insurance provision. *Allied American* does not restrict the Director's ability to do so. *Cf. Coronet Insurance Co. v. Washburn*, 558 N.E.2d 1307, 1311 (Ill. App. Ct. 1990) (affirming the validity of an amendment to an administrative regulation prohibiting an insurance company from requesting an insured to submit to a lie detector test and explaining that, "unlike the situation in *Allied*, the Director here has not barred totally all claims investigation practices utilized by insurers. Rather he has adopted a rule which regulates the manner in which such investigations are conducted, is in accordance with legislative intent and furthers the legislative objectives."). As the Illinois Supreme Court held in *Kirk v. Financial Sec. Ins. Life Co.*, "statutory authority to proscribe certain policy provisions, by rule, is found in Section 401[a]." 389 N.E.2d 144, 148 (Ill. 1978). This is precisely the authority the Director exercised. And as the Illinois appellate court explained, the Director has "wide…discretion to adopt regulations that are reasonably necessary to perform [his] statutory duties." *Julie Q.*, 963 N.E.2d at 411.

Furthermore, unlike § 143(2), under which the rule at issue in *Allied American* was promulgated, § 143(1) provides that the Director has the duty to withhold approval of insurance policies containing provisions "contrary to law or to the public policy of [Illinois]." 215 ILCS 5/143(1). As Illinois courts have explained, "Illinois has adopted a strong policy of regulating, controlling, and supervising the business of insurance because it affects the public interest," *McRaith v. BDO Seidman, LLP,* 909 N.E.2d 310, 330 (Ill. App. Ct. 2009) (citing *Coronet,* 558 N.E.2d at 1307), with "the core aim of insurance regulation [being] 'geared toward protecting

8

policyholders from unscrupulous or inexperienced management.'" *Id.* (citing *Hoylake Investments Ltd. v. Washburn,* 723 F.Supp. 42, 46 (N.D. Ill. 1989)). It was in "pursuance of the adoption of this definite Public Policy [that] the Insurance Code was passed by the General Assembly." *People ex rel. Barber v. Hargreaves, et al.,* 25 N.E.2d 416, 419 (Ill. App. Ct. 1940).

To that end, § 2001.3 was promulgated to "aid consumers" by prohibiting a provision in insurance policies which undeniably gives insurers an advantage when litigating ERISA claims for denial of benefits. *See* 29 Ill. Reg. 10172; *see also Standard Ins. Co. v. Morrison,* 584 F.3d 837, 848 (9th Cir. 2009) ("ensuring a level playing field for claims is at the heart of the state's power to regulate insurance," citing *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 385 (2002)). In view of these considerations, and given the presumption of validity afforded to administrative regulations, this Court cannot find that § 2001.3 does not further the purpose of § 143(1) or the Illinois Insurance Code to regulate the insurance industry in the public interest. Nor, for the same reasons, can the regulation be said to be "arbitrary, unreasonable or capricious." *Bd. of Trs. of Univ. of Illinois.*, 653 N.E.2d at 884. By prohibiting discretionary clauses, the effect of the regulation is merely to require what is, under federal law, already "the default standard [of review] in ERISA cases" – the *de novo* standard. *American Counsel of Life Insurers v. Ross,* 558 F.3d 600, 608 (6th Cir. 2009) (citing *Firestone Tire,* 489 U.S. at 115).

Requiring use of the default standard of review can hardly be characterized as an unreasonable or arbitrary action by the Director, particularly in light of the inherent conflict of interest that arises when the entity administering an ERISA plan, such as an insurance company, "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108 (2008). In *Glenn,* the Supreme Court held that the conflict of interest inherent in such situations is a factor that must be

considered in evaluating whether the administrator's decision amounts to an abuse of discretion. *Id.* at 117. "[A]nd if, as *Glenn*…holds, it is consistent with ERISA to account for that conflict of interest in reviewing a plan administrator's decision," *Ross,* 558 F.3d at 609, then the objective of § 2001.3 must be considered similarly consonant with the public interest in mitigating the conflict by ensuring a more level playing field between insurers and insureds even before a claim makes it to federal court. As the *Ross* court explained, "it is difficult to understand why a State should not be allowed to eliminate the potential for such a conflict of interest by prohibiting discretionary clauses in the first place," *id.,* particularly where, as here, the State's public policy is to "protect policyholders."

The conflict inherent when the health insurance carrier also makes the eligibility determinations also answers Defendants' argument that the Director was not authorized to issue § 2001.3 because discretionary clauses do not *necessarily* give rise to the harms specified in § 143(1). As the Supreme Court recognized in *Glenn,* a conflict of interest will *always* be present whenever an insurer has discretionary authority under its own policy. Moreover, discretionary clauses will always favor the insurer in litigation reviewing a denial of benefits, a fact that distinguishes the case at bar from *Allied American*, on which Defendants rely for this argument as well. *Compare Allied American,* 513 N.E.2d at 1040 (explaining that "[a]n insurance policy that provides for coverage for loss based on a stated value less a predetermined depreciation schedule does not favor the insurer or the insured," in finding that a regulation prohibiting stated value insurance was invalid) *with Morrison,* 584 F.3d at 845 (explaining that regulations prohibiting discretionary clauses remove "the benefit of a deferential standard of review from insurers").

Defendants have failed to carry their burden and overcome the presumption of validity afforded to administrative regulations. Accordingly, the Court finds that § 2001.3 is valid and enforceable. United's Policy was issued in Illinois with an effective date of July 1, 2005, and is an insurance policy by a health carrier that provides for the payment or reimbursement of health care costs or of a disability. *See* Ill. Admin. Code tit. 50, § 2001.3. As such, § 2001.3 applies to and renders the Policy's discretionary clause unenforceable—unless it is preempted by ERISA, as Defendants also argue.

### B. Preemption of § 2001.3 by ERISA

Defendants contend that, even if § 2001.3 is valid and enforceable, it is preempted by ERISA, 29 U.S.C. § 1144(a). Plaintiff counters that the regulation is spared from preemption under ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A), because it is a State law that "regulates insurance, banking, or securities."

Whether § 2001.3 is saved or preempted will depend on whether it "regulates insurance" (it plainly does not involve the banking or securities industries). In *Kentucky Ass'n of Health Plans, Inc. v. Miller,* the Supreme Court explained that for a state law to fall within ERISA's savings clause as a law that "regulates insurance," two requirements must be satisfied: (1) "the state law must be specifically directed toward entities engaged in insurance"; and (2) "the state law must substantially affect the risk pooling arrangement between the insurer and the insured." 538 U.S. 329, 341-42 (2003) (internal citations omitted). According to Defendants, § 2001.3 fails both prongs of the *Miller* test.

First, Defendants contend that § 2001.3 does not primarily target "insurers but the state and federal courts that adjudicate benefit claims." Supplemental Position Statements, Dkt. 89, at 2. The "*sole purpose* of" § 2001.3, according to Defendants, "is not to regulate *insurance* but to

11

affect the state and federal court adjudication of benefit claims." *Id.* at 3 (emphasis in original). Second, Defendants argue that the regulation does not "alter the scope of permissible bargains between the insurer and insureds" because "discretionary clauses do not come into play until litigation arises." Supplement Position Statements, Dkt. 89, at 6. In sum, Defendants argue that the "effect of [§ 2001.3]…is not to affect the *bargain* between insurer and insured but to affect *judicial review* of an insurance benefits decision." *Id.* at 7 (emphasis in original).

The Court finds these arguments unpersuasive and, while there is no controlling authority in the Seventh Circuit, contrary to the weight of authority in the Courts of Appeals in other circuits, which have addressed regulations and agency practices similar in scope to § 2001.3, and inconsistent with the uniform rulings of other judges in this district, who have addressed § 2001.3 specifically. *See, e.g.*, *Morrison,* 584 F.3d at 849 (Ninth Circuit holding that a practice of disapproving insurance contracts with discretionary clauses was saved from preemption under ERISA); *Ross,* 558 F.3d at 602 (Sixth Circuit finding that a Michigan regulation "prohibiting insurers from issuing…insurance contracts or policies that contain discretionary clauses" was saved from preemption under ERISA); *cf. Hancock v. Metro. Life Ins. Co.,* 590 F.3d 1141 (10th Cir. 2009) (finding that a Utah regulation establishing safe-harbor language and dictating font requirements for discretionary clauses was preempted by ERISA because it did not meet the second prong of the *Miller* test, but noting that the case would have been different if the regulation "imposed a blanket prohibition on the use of discretion-granting clauses"); *see also Barrett v. Life Ins. Co. of North America,* No. 11 C 6000, 2012 WL 2319152 (N.D. Ill. June 14, 2012) (holding § 2001.3 saved from preemption, adopting the "comprehensive opinions" of *Ross* and *Morrison* and "rest[ing] its ruling solidly on those pillars"); *Curtis v. Hartford Accident Ins. Co.,* No. 11 C 2448, 2012 WL 138608 (N.D. Ill. Jan. 18, 2012) (holding that § 2001.3 is not

preempted by ERISA and relying on *Ross* and *Morrison*); *Ball,* 2011 WL 759952 (holding § 2001.3 saved from preemption and finding the analysis in *Ross* persuasive).

### 1. *Specifically Directed Toward Entities Engaged in Insurance*

Under *Miller,* a state law "regulates insurance" for purposes of § 1144(b)(2)(A) of ERISA, if that law is "specifically directed toward entities engaged in insurance." 538 U.S. at 342. Defendants' contention that the effect of § 2001.3 is directed at state and federal courts, and not insurers, cannot be squared with the fact that § 2001.3 conditions an insurer's right to provide insurance in Illinois and says nothing at all about the scope of judicial review. *See Ball,* 2011 WL 759952, at *3. "It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies." *Morrison,* 584 F.3d at 842 (citing *Miller,* 538 U.S. at 337; *UNUM Life Ins. Co. of Am. V. Ward,* 526 U.S. 358 (1999) (savings provision applied to rule that required insurers to demonstrate prejudice before denying untimely claims); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724 (1985) (savings provision applied to Massachusetts rule dictating minimum amount of mental health coverage in medical insurance plans)). Just because "an insurance rule has an effect on third parties does not disqualify it from being a regulation of insurance." *Id.* (citing *Miller,* 538 U.S. at 337 (noting that the regulation in question would change the options open to third parties but holding that this did not alter the nature of the regulation)).

In *Ross,* for example, the party challenging the regulation at issue argued that the primary effect of the Michigan law would be felt by plan administrators, not insurers. 558 F.3d at 605. The Sixth Circuit explained that "regulations directed toward certain entities that also happen to disable other entities from engaging in the regulated behavior will not remove such regulations from the scope of ERISA's savings clause." *Id.* at 606 (citing *Miller,* 538 U.S. at 335-36). Like

13

the state regulation addressed in *Ross,* § 2001.3 "specifically controls the terms of insurance policies by specifying…permissible contract terms." *Id.* at 605. That it may also have consequences for judicial review of claims arising from those contract terms does not make the regulation any less an insurance regulation. *See Ball*, 2011 WL 759952, at *4 (rejecting the argument that "the purpose [of § 2001.3] is to dictate the standard of review applied by federal courts in ERISA" because that consequence alone was insufficient to alter the nature of the regulation). Section 2001.3 does not purport to prescribe a standard of judicial review that courts must employ when adjudicating disputes over benefit determinations; rather, it prohibits insurers from including a policy provision that the Department of Insurance deems unfair to Illinois consumers. The effect that prohibition has on the standard of review courts use to adjudicate claims arising under Illinois insurance policies is simply a byproduct. Section 2001.3 appropriately targets those who are subject to its jurisdiction—insurers, not the courts.

The Court therefore concludes that § 2001.3 imposes "conditions only on an insurer's right to engage in the business of insurance" in Illinois, and therefore the regulation is "directed toward entities engaged in the business of insurance." *Ross,* 558 F.3d at 605; *see also Morrison,* 584 F.3d at 842 (quoting *Ross* in holding that the state practice of disapproving discretionary clauses was directed toward entities engaged in insurance).

### 2. *Substantially Affects the Risk Pooling Arrangement Between the Insurer and Insureds*

It is not enough, however, for a regulation merely to target insurance companies. To come within the savings clause, the law must also "substantially affect the risk pooling arrangement between the insurer and the insured." *Miller,* 538 U.S. at 342. This prong of the *Miller* test ensures that the state law at issue regulates insurance, and not merely insurers. *See id.* at 334. "Otherwise, any state law aimed at insurance companies could be deemed a law that

14

'regulates insurance,' contrary to" the Supreme Court's interpretation of § 1144(b)(2)(A). *Id.* at 338 (explaining that a state law requiring insurers to pay their employees twice the minimum wage would not "regulate insurance" because the law would have no effect on the risk pooling arrangement between the insurer and the insured).

A state law satisfies the second prong of the *Miller* test if it "alters the scope of permissible bargains between the insurer and insureds." *Ball,* 2011 WL 759952, at *5 (citing *Miller,* 538 U.S. at 338-39). Defendants argue that the Illinois regulation does not substantially affect the risk pooling arrangement because "discretionary clauses do not come into play until litigation arises." Supplemental Position Statements, Dkt. 89, at 6. Defendants maintain, in other words, that a law that does not affect the allocation of risk at the outset of the coverage period, but only if and when there has been a denial of benefits, does not meet the second requirement of the *Miller* test. However, as the *Ball* court explained, the potential consequences of § 2001.3 will be considered and factored into insurance premiums long before a claim for benefits reaches federal court. *Ball,* 2011 WL 759952, at *5. Because these potential consequences will be factored into insurance premiums, which include increased litigation costs and a greater number of claims being paid, § 2001.3 "substantially affect[s] the type of risk pooling arrangements that insurers may offer." *Id.* (citing *Miller,* 538 U.S. at 338-39). And even if Defendants' contention were correct, the second prong of the *Miller* test does not contain a timing element. *Ross,* 558 F.3d at 606 (citing *Miller,* 538 U.S. at 338-39); *see also Ball,* 2011 WL 759952, at *5 ("the Supreme Court declined to set forth a timing limitation"). Rather, the dispositive inquiry is whether the regulation has altered the scope of permissible bargains between the insurers and the insured—a test that § 2001.3 satisfies regardless of when the effect of the regulation is felt. *See Ball,* 2011 WL 759952, at *5 (citing *Miller,* 538 U.S. at 338-39).

15

Like the regulations in *Ross,* § 2001.3 "directly control[s] the terms of insurance contracts," 558 F.3d at 606-07, and "dictates to the insurance company the conditions under which it must pay for the risk it has assumed." *Id.* at 607 (citing *Miller,* 538 U.S. at 339 n. 3) (internal quotations omitted). Section 2001.3 therefore narrows the scope of permissible bargains between insurers and insured, because Illinois "insureds may no longer agree to a discretionary clause in exchange for a more affordable premium." *Morrison,* 584 F.3d at 844-45. As the Ninth Circuit noted, the Supreme Court has upheld similar "scope-narrowing regulations." *Id.* at 845 (citing *Rush Prudential,* 536 U.S. at 355 (scope of permissible bargains narrowed by Illinois law requiring HMO's to provide independent review of whether services were "medically necessary," in that consumers could not agree to waive independent review of a medical decision in exchange for a lower premium); *UNUM Life,* 526 U.S. at 358 (scope narrowed in that insureds cannot reject notice-prejudice rule); *Metro. Life.,* 471 U.S. at 724 (denying insureds the ability to accept plans without minimum mental-health coverage)).

Accordingly, § 2001.3 is "specifically directed toward entities engaged in insurance" and it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." Therefore, § 2001.3 is saved from preemption under 29 U.S.C. § 1144(a). *See Barrett,* 2012 WL 2319152 ; *Curtis*, 2012 WL 138608; *Ball,* 2011 WL 759952.

### III. Conclusion

For the reasons set forth above, the Court holds that United's denial of Zuckerman's claim for LTD benefits is subject to *de novo* review in this Court. As previously scheduled, a status will be held on September 11, 2012, at 9:00 a.m. The parties are directed to confer in advance of the status hearing and to be prepared at that time to present their joint position, or in

the event that they do not agree, their respective positions, regarding a scheduling order to govern the remainder of this litigation.

Date: September 6, 2012
_____
John J. Tharp, Jr.
District Judge